## ElezIN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

IVETTE VELAZQUEZ-VARGAS     *
                                 *
      Plaintiff               *
v.                                 *      Civil No. 07-1645 (SEC)
                                   *
PFIZER PHARMACEUTICAL, LLC,     *
RENE TORRES in his personal capacity,*
his wife CARMEN FIGUEROA          *
and their conjugal partnership         *
                                   *
      Defendants            *
**********************************

### OPINION AND ORDER

Pending before this Court is Pfizer Pharmaceutical, LLC's (hereinafter "Pfizer") Motion for Summary Judgment (Dockets ## 27-28), Plaintiff's opposition thereto (Dockets # 40),[1] and Pfizer's Motion to Strike (Docket # 44). After reviewing the parties' filings and the applicable law, Pfizer's motion for summary judgment is hereby **GRANTED in part and DENIED in part.**

### Factual Background

Plaintiff Ivette Velazquez-Vargas (hereinafter "Plaintiff") filed suit against Pfizer, her employer, René Torres (hereinafter "Torres"), his wife and their conjugal partnership (collectively "Defendants"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq*, Puerto Rico Law 100, 29 P.R. Laws Ann. §1323 *et seq,* Law 69, 29 P.R. Laws Ann. § 1321 *et seq*, Law 17, 29 P.R. Laws Ann. §155 *et seq*, and both the United States and the Commonwealth of Puerto Rico's Constitutions. Plaintiff alleges she was sexually harassed by Torres and retaliated against by Pfizer. See Docket # 1. According to the complaint, Plaintiff started working with Pfizer on January 7, 1999 as an operator. Plaintiff contends that on or around September 2006, the discriminatory actions began. She further avers that due to Defendant's discriminatory actions she has suffered considerable damages, and

---

[1] Defendants replied at Docket # 46 and Plaintiffs Sur-Replied at Docket # 52.

requests that this Court enter declaratory judgment against Defendants, as well as impose punitive, double and compensatory damages, back pay, costs, interest, and attorney's fees, among others.

Pfizer moves for summary judgment arguing that Plaintiff has failed to establish a *prima facie* case of discrimination. Dockets ## 27-28. Specifically, Pfizer contends that Plaintiff did not show that the conduct was sufficiently severe or pervasive as to alter the conditions of her employment and that it created an abusive work environment.[2] They further argue that there is no basis for employer liability. As to Plaintiff's retaliation claims, Pfizer avers that she has not demonstrated a causal nexus between the filing of the internal grievance and the alleged adverse employment action, that is, the termination of Plaintiff's disability benefits under Pfizer's Salary Continuation Policy (hereinafter "SCP"). Moreover, they argue that there was a legitimate non-discriminatory reason for the termination of Plaintiff's SCP benefits and the same is not a pretext for retaliation.

**Standard of Review**

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ramírez Rodríguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005).   In reaching such a determination, the Court may not weigh the evidence.  Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994). At this stage, the court examines the record in the "light most favorable to the nonmovant,"

---

[2] A hostile work environment claim requires a showing that: (1) Plaintiff is a member of a protected class (in this case, her gender); (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive; and (6) some basis of employer liability. Rosario v. Dep't of the Army, 573 F. Supp. 2d 524, 529 (D.P.R. 2008) (citing Pomales v. Celulares Telefonica, 447 F.3d 79, 83 (1st Cir. 2006)).

and indulges all "reasonable inferences in that party's favor." <u>Maldonado-Denis v. Castillo-Rodríguez</u>, 23 F.3d 576, 581 (1st Cir. 1994); <u>Morales-Figueroa v. Banco Bilbao Vizcaya Argentaria</u>, 550 F. Supp. 2d 220, 224 (D.P.R. 2007).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. <u>Garside v. Osco Drug, Inc.</u>, 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A  factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" <u>DePoutout v. Raffaelly</u>, 424 F.3d 112, 116 (1st Cir. 2005)(citing <u>Garside</u>, 895 F.2d at 48 (1st Cir. 1990)); <u>see also</u> <u>SEC v. Ficken</u>, 546 F.3d 45, 51 (1st Cir. 2008).

 In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. <u>See</u> <u>Hadfield v. McDonough</u>, 407 F.3d 11, 15 (1st Cir. 2005) (citing <u>Medina-Muñoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990).  Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. <u>Cadle Co. v. Hayes</u>, 116 F.3d 957, 960 (1st Cir. 1997).  Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgment as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." <u>Méndez-Laboy v. Abbot Lab.</u>, 424 F.3d 35, 37 (1st Cir. 2005) (citing <u>Maldonado-Denis</u>, 23 F.3d at 581. "The non-movant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue. . . .  Failure to do so allows the summary judgment engine to operate at full throttle." <u>Id.</u>; <u>see also</u> <u>Kelly v. United States</u>, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); <u>Medina-Muñoz</u>, 896 F.2d at 8 (citing <u>Mack v. Great Atl. & Pac. Tea Co.</u>, 871 F.2d 179, 181 (1st Cir. 1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be

conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.").

### Applicable Law and Analysis

This Court will first address Pfizer's Motion to Strike Exhibits 1, 3, & 4 of Plaintiff's Opposition to Motion for Summary Judgment. Docket # 44.

*Pfizer's Motion to Strike*

In addition to their Motion for Summary Judgment, Pfizer also moves this Court to strike Exhibits 1 (Plaintiff's affidavit), 3 and 4 of Plaintiff's Opposition to their motion for summary judgment. See Docket # 44. They first argue that Plaintiff's affidavit contradicts her prior deposition testimony. In support of said argument, Pfizer provides the following alleged contradictions: (1) during her deposition, Plaintiff testified that when she returned to work on January 8, 2007, Torres was working in his assigned area and did not have any contact with her other than staring at her through the glass window, however, in her sworn statement she claims that upon returning to work, she had several encounters with Torres in her working area and he was present in said area every day (Docket # 44 at 3-4); (2) in her deposition, Plaintiff testified that Torres would call her working area to ask how she was doing, whether everything was fine, how she was feeling, how her relationship was going and whether she had any problems, whereas in her affidavit Plaintiff averred for the first time that Torres would also call her working area to tell her that she looked pretty that day, that he loved her hair, and that he could not stop trying to talk to her (Docket # 44 at 5); (3) during her deposition, Plaintiff admitted that despite being notified that she would no longer receive benefits under Pfizer's SCP, Pfizer advised her that she would receive benefits under Puerto Rico's Non-Occupational Disability Act (SINOT) after April 30, 2007, and that she received said benefits for a year; nonetheless, in her affidavit, Plaintiff stated that Pfizer told her that "she was not going to receive any other benefit from defendant because she was able to return to work." (Docket # 44 at 5); and that (4) in her affidavit, Plaintiff states for the first time that the internal grievance filed with the Human Resources Department is merely a

summary of the matters she discussed with Maria Guadalupe, Senior Human Resources Specialist, whereas during her deposition Plaintiff didn't mention anything to that effect despite admitting that Guadalupe afforded her the opportunity to amend or correct her internal grievance and she did not do so (Docket # 44 at 6-7). Moreover, Pfizer contends that Plaintiff did not proffer an explanation for said contradictions nor express any confusion or error when being deposed.

The Supreme Court has held that "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999); see also Melanson v. Browning-Ferris Indus., 281 F.3d 272, 279 n. 5 (1st Cir. 2002); Rivera-Rocca v. RG Mortg. Corp., 535 F. Supp. 2d 276, 286 n. 5 (D.P.R. 2008). As such, "when an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory" without an explanation as to why the testimony has changed. Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 332 n. 3 (1st Cir. 2008). An insistence upon explanation of any inconsistencies is warranted when the conflict involves both purely factual contradictions as well as legal conclusions. Policy Mgmt. Sys. Corp., 526 U.S. at 806.

Upon reviewing the record, this Court finds that there are inconsistencies between Plaintiff's deposition testimony and the affidavit she provides in support of her opposition to Pfizer' motion for summary judgment. Moreover, Plaintiff does not provide an explanation for the contradictions noted by Pfizer. Specifically, this Court notes that although Plaintiff testified in her deposition that Torres would call her working area to ask how she was doing, whether everything was fine, how she was feeling, how her relationship was going and whether she had any problems (Docket # 33, Exh. 5, pp. 38-39), in her affidavit Plaintiff averred for the first time that Torres would also call her working area to tell her that she

looked pretty that day, that he loved her hair, and that he could not stop trying to talk to her. Docket #40, Exh. 1, ¶ 17. Furthermore, during her deposition, Plaintiff admitted that despite being notified that she would no longer receive benefits under Pfizer's SCP, Pfizer advised her that she would receive benefits under SINOT after April 30, 2007, and that she received said benefits for a year. Docket # 33, Exh. 5, p. 108.  However, in her affidavit, Plaintiff stated that Pfizer told her that "she was not going to receive any other benefit from defendant because she was able to return to work.." Docket # 40, Exh. 1, ¶¶ 9 & 11. Finally, in her affidavit, Plaintiff states for the first time that the internal grievance filed with the Human Resources Department is merely a summary of the matters she discussed with Guadalupe (Docket # 40, Exh. 1, ¶ 30), whereas during her deposition she didn't mention anything to that effect, despite admitting that Guadalupe afforded her the opportunity to amend or correct her internal grievance, and which she did not do. Docket # 33, Exh. 5, pp. 70-71.

Based on the foregoing, the inconsistent portions of Statements 9, 11[3], 17[4], and 30[5] of Plaintiff's affidavit will not be considered by this Court.  Notwithstanding, this Court notes that both in her deposition and affidavit, Plaintiff stated that when she returned to work on January 8, 2007, although Torres did not call her, he stared at her and came to her working area every day despite Guadalupe's assurances that he would be kept away from her work area. Docket # 33, Exh. 5, pp. 73-76, 78-79; Docket # 30, Exh. 1, ¶¶ 7, 8 & 33. Moreover, in both her deposition and affidavit, Plaintiff stated that the work areas were in front of each other. Upon being questioned by Pfizer's counsel during her deposition, Plaintiff admitted that there was a "glass hall", and each working area was on either side of said "glass hall" (Docket # 33, Exh. 5, p. 20; Docket # 40, Exh. 1, ¶ 7). As such, said statements are not

[3] "I was told that I was not going to continue receiving any other benefits from defendant because I was able to return to work, regardless of what my doctor had instructed."

[4] "Torres would call me constantly to the production line to tell me that I looked pretty that day, that he loved my hair, that he loved to hear my voice..."

[5] "...the statement did not contain everything that Guadalupe and I discussed. Guadalupe told me that it was a judgment of my allegations."

contradictory and will not be stricken from the record.

Pfizer also moves this Court to strike Plaintiff's Exhibit 3, that is, the Social Security Administration's (hereinafter "SSA") notification of benefits. Docket # 44. They argue that in their discovery requests, Plaintiff stated that she had requested disability benefits to the SSA, but that her request had been denied on April 7, 2008. However, in her affidavit, Plaintiff alleges that she was declared disabled to work by the SSA. Docket 40, Exh. 1, ¶ 35. Pfizer argues that Plaintiff failed to disclose that the SSA had awarded her disability benefits. Pursuant to FED. R. CIV. P. 26(e), a party shall supplement or correct a previous disclosure or response if additional information has not otherwise been known to the parties during discovery or in writing. When a party fails to disclose or supplement an earlier response, she is not allowed to use said information unless the failure is substantially justified or harmless. FED. R. CIV. P. 37(c). In opposition, Plaintiff avers that the SSA's decision was notified to her after discovery had been concluded in the instant case.  Docket # 52. Plaintiff further notes that she informed the defendant's expert witness about said decision during her evaluation and, that the SSA's decision is mentioned in the expert's report. Id.  However, she does not provide any evidence in support of said allegation. Considering Rule 26 and Rule 37 mandates, Pfizer's request to strike Exhibit 3 of Plaintiff's opposition is **GRANTED**.

Pfizer also requests that Exhibit 4 be stricken because Plaintiff never served them with the subpoena issued to Dr. Arlene Rivera-Mass. In her response, Plaintiff provides a fax transmittal sheet which shows that the subpoena was sent by fax to Pfizer on the same date it was sent to Dr. Rivera-Mass. Docket # 52-2. As such, Pfizer's request to strike Exhibit 4 is **DENIED**.

### Uncontested Facts

Pursuant to the  Defendant's Statement of Uncontested Facts (hereinafter "SUF") at Docket # 27, the following facts are uncontested.[6]

---

[6] Facts ¶¶ 1, 2, 4, 5, 8, 9, 10, 19, 21, 22, 23, 28, 29 and 30 were admitted by Plaintiff. SUF ¶ 16 was properly controverted by Plaintiff.

Plaintiff began her employment at Pfizer on January 7, 1999, as a Packaging Operator at the Caguas site. SUF ¶ 1. At the packaging department in Caguas, different packaging lines are distributed across several contiguous glass-surrounded rooms. This "fish-tank" layout enables supervisors and assurers to oversee the employees, identify any problems on the packaging line and determine whether any prompt action is needed in relation to the product. SUF ¶ 2.  José Agosto was Plaintiff's immediate supervisor during the second shift in the "High Run." SUF ¶ 3. Torres held the position of Administrative Clerk from approximately April 18, 2005 to May 29, 2006. SUF ¶ 4. On or around May 2006, Torres started temporarily working as a Process Flow Assurer at the "Flexi-Run" area of the packaging department during the second shift. SUF ¶ 5.While Torres worked at the "Flexi-Run" area, Plaintiff worked at the "High-Run" area. Plaintiff's Additional Relevant Facts, Docket # 40, (hereinafter "ARF") ¶ 33. Torres was not Plaintiff's supervisor at the "High-Run" area, although their working areas were in front of each other divided by a glass hall. SUF ¶ 7; ARF ¶ 7. At all times relevant herein, Pfizer had clear policies prohibiting sexual harassment and discriminatory conduct in the workplace. SUF ¶ 8. Plaintiff admits being aware of said policies and having received training meant to prevent sexual harassment in the workplace. SUF ¶ 9.

Plaintiff met Torres at Pfizer. ARF ¶ 31. As part of her responsibilities as Packaging Operator, and Torres' responsibilities of his position in Documentation Support, Plaintiff and Torres interacted when a commentary had to be included in a Pfizer record. Id. Plaintiff and Torres both worked the second shift from 2 pm to 10:30 pm. Id.

On December 2006, there was a plant shutdown. ARF ¶ 46. Plaintiff did not have any vacation accrued by said date, so she worked during the shutdown. Id. On or around December 27, 2006, Plaintiff informed Francisco Saenz, Supervisor at the Packaging Department, that she felt uncomfortable working with Torres, since she believed he was

taking advantage of his position, to sexually harass her. SUF ¶ 10. On that same date, Saenz called Guadalupe and reported Plaintiff's concerns regarding Torres' conduct. Id. Guadalupe informed Saenz that she had just spoken with Plaintiff and that the Human Resources Department was in the process of investigating her complaint. Id.

On December 27, 2006, Plaintiff filed an internal grievance with the Human Resources Department.  SUF ¶ 11. Said grievance alleged that: (1) on December 26, 2006, she called to inform her absence due to a situation with her child, and Torres denied her request to charge her absence as a vacation day, and instead told her it would charged as a personal day; (2) that after working hours, several employees met at a bar called "Oh-Oh" located near Pfizer, where Torres grabbed her by the arm and invited her to go out with him; (3) Torres would call her working area to speak with her; (4) Torres invited her to go out with him and when Plaintiff told him she was married, Torres said he didn't care; (5) Torres would apologize for being disrespectful and would tell her that he did not love his wife; (6) that Torres would stare at her through the glass window when he walked by her working area; (7) Torres bought a perfume from Plaintiff and said that he would not accept it from anyone else since then he wouldn't be able to talk to her; (8) Plaintiff told him that she would talk to Rosa Colón, from the Human Resources Department, and that Torres said he didn't care. Id. After December 27, 2006, Plaintiff did not contact Human Resources to amend her internal grievance. SUF ¶ 13.  Pfizer began an investigation into Plaintiff's allegations. SUF ¶ 14. Pfizer interviewed Torres on several occasions and some witnesses provided by Torres were interviewed. Id.; ARF ¶ 60. After the filing of Plaintiff's complaint, Torres was not moved nor changed from "Flexi-Run" area. ARF ¶ 61.

On December 29, 2006, Plaintiff left on medical leave and requested benefits from the State Insurance Fund. SUF ¶ 15. On January 8, 2007, Plaintiff returned to work and continued to work the second shift in the "High-Run' area. ARF ¶ 51.[7] On January 11, 2007,

_____

[7] In SUF ¶ 17, Pfizer avers that Plaintiff admitted that after the filing of the internal grievance on December 27, 2006, Torres did not call her and that she did not have any other issues with him.

Plaintiff met with Eric Lebrón, Human Resources Director, and told him that Torres had invited her to a motel that night they were at the "Oh-Oh" bar, that Torres and his wife showed up at the end of the year party although they were not invited, and that Torres was ill-mannered and used foul language. SUF ¶ 18. Guadalupe told Plaintiff that Pfizer was in the process of completing its investigation and would take corrective measures based on the results obtained. Id.

On January 22, 2007, Plaintiff left on a medical leave of absence and began receiving benefits under Pfizer's SCP. SUF ¶¶ 19 & 22. Said policy is intended to ease the financial impact on employees when a qualified disability occurs and its requirements are met, while also facilitating a return to productive service. SUF ¶ 21. Under the SCP, a claim cannot be denied unless it is reviewed and certified by a company physician. Id. If the information received by the company physician does not confirm or support the alleged illness or injury, the company may require additional medical opinions or evaluations to further evaluate the claim. Id. As such, the company physician may refer the employee to a specialized medical professional for further evaluation. Id. The benefit eligibility is based on the documents submitted by the employee's health case provider and any additional third party opinions. Id. If the claim is deemed valid, the benefit will be approved for a specific period of time. Id.

On February 15, 2007, Pfizer finalized its investigation into Plaintiff's allegations and concluded that there was insufficient evidence to substantiate her claims of sexual harassment. SUF ¶ 20. Notwithstanding, Pfizer informed Plaintiff that corrective measures would be taken and, on January 22, 2007, returned Torres to his regular Document Support position at the manufacturing area and scheduled him to work on the first shift, while Plaintiff would continue working on the second shift as a Packaging Operator. Id. Plaintiff

---

However, upon reviewing Plaintiff's deposition, provided in support of said allegation, this Court notes that both in her deposition and affidavit Plaintiff stated that two or three days after returning to work, Torres would still stare at her through the glass window and was present in her work area, despite the fact that Guadalupe had told Plaintiff that Torres was not supposed to be in that area. See Docket #33, Exh. 5, p. 75; Docket # 40, Exh. 1, ¶ 7. As such, this Court will disregard SUF ¶ 17.

was informed of the results of Pfizer's investigation on April 30, 2007, since she had been on medical leave. Id.

On February 23, 2007, Plaintiff was notified that her benefits under the SCP policy were approved until March 5, 2007. SUF ¶ 23. In the *interim*, on February 27, 2007, Plaintiff filed a complaint at the EEOC. SUF ¶ 24. On March 2007, Plaintiff requested an extension of her benefits under Pfizer's SCP. SUF ¶ 25. Pfizer's Medical Department determined that the continuation of her benefits was not justified past March 31, 2007 and, as such, she was referred to an independent psychiatrist, Dr. Rivera-Mass, for a medical evaluation. Id. On March 27, 2007, Plaintiff was evaluated by Dr. Rivera-Mass, who rendered an Independent Psychiatric Evaluation concluding that Plaintiff was able to return to work as long as she and Torres were placed in different shifts and would have no contact. SUF ¶ 26; ARF ¶ 63. Pfizer paid Dr. Rivera-Mass' fees. Id. Dr. Rivera-Mass did not review Plaintiff's medical records. Id.

After April 30, 2007, Pfizer notified Plaintiff that she was not eligible to continue receiving disability benefits under its SCP. SUF ¶ 27-28. However, taking into consideration that Plaintiff's physician had recommended rest, Plaintiff was advised she would continue to receive benefits under SINOT. SUF ¶¶ 27-28. On July 5, 2007, Plaintiff requested reconsideration of Pfizer's decision to discontinue benefits. SUF ¶ 29. Upon review of Plaintiffs record, and the recommendation of the Independent Medical Examiner, Pfizer upheld its prior decision and notified Plaintiff on July 18, 2007. Id. Plaintiff never returned to work. ARF ¶ 34. On July 18, 2007, Plaintiff filed the instant suit. SUF ¶ 30.

Considering the above mentioned facts, this Court will now address Pfizer's request for summary judgment on Plaintiff's sexual harassment claim.

   i. *Sexual Harassment under Title VII*

Title VII of the Civil Rights Act, "makes it an unlawful employment practice to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's... sex." See 42 U.S.C. § 2000e-

2(a)(1); see also Harris v. Forklift, 510 U.S. 17, 20 (1993). The United States Supreme Court has interpreted the phrase terms, conditions or privileges of employment broadly, and has stated that it encompasses Congress' intent to "strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." Harris, 510 U.S. at 20. That is, Title VII is violated whenever "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." Id. (Citations omitted).

In order to succeed in a hostile work environment claim, plaintiff must show that: (1) she is a member of a protected class (in this case, her gender); (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive; and (6) some basis of employer liability. Rosario, 573 F. Supp. 2d at 529 (citing Pomales, 447 F.3d at 83).

There is no controversy as to the fact that Plaintiff is a member of a protected class, that she was subjected to unwelcome sexual harassment and that the harassment was based on sex. However, Pfizer argues that the conduct was not sufficiently severe or pervasive so as to alter the conditions of Plaintiffs employment and that it was not objectively abusive. Moreover, Pfizer contends that Plaintiff failed to satisfy the employer liability prong of the hostile environment test.

Although there is no mathematically precise test, in order to determine whether an environment is hostile or abusive, the Court must look at all the circumstances, which may include: (1) the frequency of the discriminatory conduct, (2) its severity, (3) whether it is physically threatening or humiliating, (4) whether it was just a mere utterance, and (5) whether it unreasonably interferes with an employee's work performance. Harris, 510 U.S. at 23; see also Marrero v. Goya of Puerto Rico, 304 F. 3d 7, 18-19(1st Cir. 2002); Lee-Crespo

v. Schering-Plough del Caribe, Inc., 354 F. 3d 34, 46 (1st Cir. 2003); Pomales v. Celulares
Telefónica, Inc., 447 F. 3d 79, 83 (1st Cir. 2006).

The "mere utterance of an epithet which engenders offensive feelings in an employee
does not sufficiently affect the conditions of employment to implicate Title VII." Harris, 510
U.S. at 20. The conduct must be sufficiently severe or pervasive for a reasonable person to
find that the work environment was hostile or abusive. Id. Title VII also requires that the
employee subjectively perceive the work environment as abusive. Id. Despite Title VII's
protection against discrimination based on sex, the Supreme Court has clearly stated that "the
prohibition of harassment on the basis of sex requires neither asexuality nor adrogyny in the
workplace; it forbids only behavior so objectively offensive as to alter the conditions of the
victim's employment." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81 (1998).
That is, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or
abusive work environment- an environment that a reasonable person would find hostile or
abusive- is beyond Title VII's purview." Id.

As previously stated, Plaintiff's sexual harassment claim stands on a series of
incidents or comments involving Torres. The uncontested incidents can be summed up as
follows: (1) on December 26, 2006, she called to inform that she would be absent due to a
situation with her child, and Torres denied her request to charge her absence as a vacation
day, and instead told her it would charged as a personal day; (2) that after working hours
several employees met at a bar called "Oh-Oh" located near Pfizer, where Torres grabbed her
by the arm and invited her to go out with him; (3) Torres would call her working area to
speak with her; (4) Torres invited her to go out with him and when Plaintiff told him she was
married, Torres said he didn't care; (5) Torres would apologize for being disrespectful and
would tell her that he did not love his wife; (6) that Torres would stare at her through the
glass window when he walked by her working area; (7) Torres bought a perfume from
Plaintiff and said that he would not accept it from anyone else but her, since then he wouldn't
be able to talk to her; (8) she told him  that she would talk to Rosa Colón, from the Human

Resources Department, and that Torres said he didn't care. SUF ¶ 11. After December 27, 2006, Plaintiff did not amend her internal grievance. SUF ¶ 12.

Although both parties agree that Plaintiff filed an internal grievance on December 27, 2006, there is controversy as to the incidents or comments made by Torres. See SUF ¶ 11 and Response to SUF ¶ 11. Although Plaintiff did not include certain incidents in her grievance, she did provide some information during her deposition and affidavit about other incidents and comments made by Torres. See ARF 32, 36, 38, 40, 42, 43 and 49. These consist of: (1) Plaintiff calling Torres for help in the preparation of the commentary on one of Pfizer's record[8], and him saying that he would do anything she wanted; (2) Torres' pervasive and constant staring, and additionally, telling her that he tried to avoid looking at her but couldn't control himself, and that he would stop by the production line just to look at her and tell her about his personal life; (3) Torres calling her and apologizing for not being able to stop looking at her, and telling Plaintiff that he was not satisfied with his wife; (4) telling Plaintiff to take his number so she could call him when she wanted to go out with him; (5) when Plaintiff told Torres that she would tell Rosa Colon about the situation, he said he didn't care and dared her to tell Rosa Colon; (6) Torres following Plaintiff to her car and showing up anywhere she went;  (7) Plaintiff requesting that Guadalupe interview Heriberto del Valle, Orlando Garcia, Ismael Claudio, Luis Torres and all operators, but that she failed to do so. Pfizer contends that Plaintiff failed to inform Guadalupe about said alleged incidents despite being granted the opportunity to amend her complaint. Pfizer provides the internal grievance, the investigation file and the investigation results in support of its opposition.

In support of said allegations, Plaintiff provides her own affidavit, whereas in opposition, Pfizer supplied Plaintiff's grievance investigation file, which mainly consists of witness' statements about the allegations therein set forth by Plaintiff. As previously mentioned, the frequency, severity and nature of the alleged harassing conduct is extremely

---

[8] Pfizer admitted that Plaintiff and Torres worked together when a commentary had to be included in a Pfizer record. ARF ¶ 31; Response to ARF ¶ 31, Docket # 45.

relevant in determining whether a hostile working environment ensued. Upon reviewing the party's arguments and documents in support, this Court cannot, at this juncture, determine whether said events occurred. Issues of fact remain as to some of the incidents Plaintiff believes demonstrate a hostile work environment and which Pfizer denies occurred, or disavows are of a harassing nature. This Court notes that in determining whether to grant summary judgment, a court may not weigh the evidence. More so when the differing versions of the events may reasonably be resolved in favor of either party.

Notwithstanding the above, even if we conclude that the evidence suffices to make out a *prima facie* case of sexual harassment, Plaintiff's Title VII claim must founder because there are also material issues of fact as to the sixth element of this claim, that is, of employer liability. The Supreme Court has divided employer liability along a line that separates supervisors from non-supervisors. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765, 141 L. Ed. 2d 633, 118 S. Ct. 2257 (1998); Faragher.v. City of Boca Raton, 524 U.S. 775, 807-08 (1998). "A plaintiff must satisfy different standards for establishing employer liability in a hostile work environment case depending on whether the harasser is a supervisor or co-employee of the victim." Forrest v. Brinker Int'l Payroll Co., LP, 511 F.3d 225, 231 (1st Cir. 2007); see also Crowley, 303 F. 3d at 401.

When a hostile work environment ensues due to a supervisor's actions, the employer is vicariously liable for it. However, the employer is entitled to set forth an affirmative defense, known as the Faragher/Ellerth defense. Noviello v. City of Boston, 398 F.3d 76, 94; see Burlington, 524 U.S. at 765; Faragher, 524 U.S. at 807-08 (1998). Said defense consists of two elements which allow the employer to avoid liability. First, the employer must show that it "exercised reasonable care to prevent and correct promptly" the harassment. Ellerth, 524  U.S. at 765. Second, the employer must show that the employee "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id. The First Circuit has held that "the essence of supervisory status is the authority to affect the terms and conditions of the victim's employment."

Noviello v. City of Boston, 398 F.3d 76, 96 (citing Parkins v. Civil Constructors of Ill., Inc., 163 F.3d 1027, 1034 (7th Cir. 1998)). This authority "primarily consists of the power to hire, fire, demote, promote, transfer, or discipline an employee." Id. (Citations omitted). The determination of whether an employee is a supervisor or a co-worker is factual. Id. at 95. An employee that does not possess such authority cannot qualify as a supervisor for purposes of imputing vicarious liability to the employer and, instead, should be regarded as an ordinary coworker. However, supervisor liability as to a co-worker "involves a showing that the employer knew or should have known about the harassment, yet failed to take prompt action to stop it." Id. at 95; see also Forrest, 511 F.3d at 231.

In order to show that Torres was Plaintiff's supervisor, Pfizer provides Maria de los Angeles Hernandez's affidavit, an operator at Pfizer. SUF ¶ 6. Based on said declaration, Pfizer states that Torres was a non-exempt employee and did not have the authority to hire, terminate or discipline the employees at the packaging department. Id. Moreover, Pfizer contends that Torres had to refer any situation to his supervisors or to the Human Resources Department. Id.  In opposition, Plaintiff set forth her affidavit testimony. Docket # 40, Plaintiff's Response to SUF, ¶ 6. She contends that Torres, as an assurer, was the authoritative personnel in the area and he could affect the terms and conditions of the employees, as well as make decisions as to vacation leave, payment of sick days and disciplining employees. Id. Therefore, both parties provide affidavits in order to show whether Torres is a co-worker or supervisor. As such, Plaintiff has properly asserted an issue of fact as to whether Torres is a co-worker or a supervisor, which is a material issue of fact needed to determine employer liability.

Although there is no controversy as to the fact that Torres was not Plaintiff's supervisor in her working area, controversy exists as to whether he could affect the terms and conditions of her employment, discipline or make decisions as to her vacation and sick leave. This Court notes that at this juncture, the record must be examined in the "light most favorable to the nonmovant," and indulging  all "reasonable inferences" in the non-moving

party's favor. <u>Maldonado-Denis</u>, 23 F.3d at 581.

Furthermore, genuine issues of fact remain as to the date Plaintiff first informed Pfizer about Torres' alleged harassing conduct. Pfizer contends that Plaintiff specifically stated that she had not complained about Torres prior to the filing of the internal complaint since he had apologized three or four times, and she felt she could handle the situation. SUF ¶ 12. However, Plaintiff avers that although she had not filed an internal grievance at Human Resources prior to December 27, 2006, she had spoken to Agosto, her working area's assurer, about the incidents with Torres.[9] Upon taking into consideration Plaintiff's properly supported allegations, an issue of material fact arises as to whether Plaintiff had informed Pfizer, through her supervisor Agosto, of the harassing conduct. Pfizer's alleged inaction after Plaintiff's comments to Agosto is also a material issue of fact, relevant to a determination on whether Pfizer took the necessary steps to correct the situation.

Based on the foregoing, Pfizer's request for summary judgment on Plaintiff's sexual harassment claim is **DENIED**. However, this does not dispose of the instant motion. Pfizer also moves this Court to grant summary judgment on Plaintiff's retaliation claim.

### ii. *Retaliation*

Pfizer argues that Plaintiff's claim fails as a matter of law because she failed to meet the third element of her *prima facie* of retaliation, that is, that a causal connection exists between the protected activity and the adverse employment action. Specifically, Pfizer argues that there is no temporal proximity between the protected activity and the alleged retaliatory action, since Plaintiff filed her complaint on December 27, 2006 and her SCP benefits ended on May 9, 2007. Moreover, Pfizer contends that even if this Court were to find that there is temporal proximity, Pfizer's decision to terminate Plaintiff's SCP benefits was non-

---

[9] Pfizer contends that Plaintiff's affidavit statement ¶ 25, provided in support of ARF ¶ 44, is a sham statement since she did not provide such information during her deposition. However, upon reviewing Plaintiff's deposition, this Court finds that therein Plaintiff stated that before speaking to Guadalupe about the alleged harassment, she had "already commented it to José Agosto in November (2006)." Docket # 33, Exh. 5, p. 29.

discriminatory. To that effect, Pfizer avers that Plaintiff's SCP was given proper consideration, that Pfizer followed the policy's procedure and, as a result of medical opinions and evaluations from the company physicians and an independent physician, Plaintiff was not entitled to continue receiving the benefits past May 9, 2007.

This Court will first set forth the applicable standard for retaliatory claims under Title VII. Title VII's prohibitions also encompass retaliatory conduct moved by an employee engaging in protected activity. 42 U.S.C. §2000e-3. The First Circuit has held that "[a]n employee has engaged in activity protected by Title VII if she has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." Fantini v. Salem State College, No. 07-2026, 2009 U.S. App. LEXIS 3508, *22 (1st Cir. 2009)(citations omitted).

In order to make a *prima facie* case of retaliation under Title VII, a plaintiff must show that: "(1) she engaged in protected conduct under Title VII; (2) she suffered an adverse employment action; and (3) the adverse action was causally connected to the protected activity." Id.; Goya, 304 F. 3d at 22; see also Dixon v. Int'l Bhd. of Police Officers, 504 F.3d 73,81 (1st Cir. 2007); Garcia v. Bristol-Myers Squibb Co., 535 F.3d 23, 31 n. 2 (1st Cir. 2008). Adverse employment actions may include "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." Id. at 23. The First Circuit has also included, as adverse employment action, an employer's failure to pay a Christmas bonus, to provide W-2 forms, to pay the employee's taxes and to comply with statutory benefits conferred upon employees. See Torres-Negron v. Merck & Co., 488 F.3d 34 (1st Cir. 2007).

For the retaliatory conduct to be actionable, a Title VII plaintiff must show that "a reasonable employee would have found the challenged action materially adverse... [that is], it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Carmona-Rivera v. Commonwealth of Puerto Rico, 464 F. 3d 14, 20 (1st Cir.

2006); see also Rivera-Rocca, 535 F. Supp. at 289. In other words, "the alleged retaliatory action must be material, producing a significant, not trivial, harm... trivial actions such as petty slights, minor annoyances, and simple lack of good manners, will not normally create such deterrence." Id.

Once the plaintiff establishes a *prima facie* showing of retaliation, the McDonnell Douglas burden-shifting approach applies. Enica v. Principi, 2008 U.S. App. LEXIS 21186, *37 (1st Cir. 2008). As a result, in order to rebut the presumption of retaliation, the defendant must articulate a legitimate, non-retaliatory reason for its employment decision. Id. If the defendant does so, "the presumption of discrimination drops from the case, and the plaintiff retains the ultimate burden of showing that the employer's stated reason for [the challenged actions] was in fact a pretext for retaliating..." Billings v. Town of Grafton, 515 F.3d 39, 55 (1st Cir. 2008) (citations omitted.).

Upon reviewing the record, this Court finds that it is uncontested that, on December 27, 2006, Plaintiff filed an internal grievance at Pfizer's Human Resources Department, alleging Torres had sexually harassed her. SUF ¶ 11. Moreover, on February 27, 2007, Plaintiff filed a complaint at the EEOC. SUF ¶ 24. Therefore, the first prong of the *prima facie* claim is met, that is, Plaintiff engaged in the protected conduct.

Subsequently, on April 30, 2007, Pfizer informed Plaintiff that her SCP benefits would be discontinued. SUF ¶ 27-28. Pfizer does not argue that said action was not adverse, instead, they argue that there is no temporal proximity between the protected action and the alleged retaliatory action, and that its decision was not motivated by discriminating factors. As such, this Court finds that Plaintiff experienced an adverse employment action.

Notwithstanding the above, this Court finds that Plaintiff did not show a causal connection between the protected conduct and the adverse employment action. The First Circuit has held that "temporal proximity alone can suffice to 'meet the relatively light burden of establishing a *prima facie* case of retaliation.'" Dennis v. Osram Sylvania, Inc., 549 F.3d 851, 857 (1st Cir. 2008)(citing DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2008)).

However, in the instant case, this Court need not decide whether the time elapsed between the filing of Plaintiff's internal grievance or the complaint in the EEOC and the adverse employment action is sufficient to establish a *prima facie* case of retaliation.

A review of the record shows that, in her opposition to the motion for summary judgment, Plaintiff admitted all of Pfizer's statements regarding the procedure used to determine if an employee is entitled to SCP's benefits. SUF ¶ 19, 21 & 22. To that effect, Pfizer stated that under the SCP, a claim cannot be denied unless it is reviewed and certified by a company physician. If the information received by the company physician does not confirm or support the alleged illness or injury, the company may require additional medical opinions or evaluations to further evaluate the claim. As such, the company physician may refer the employee to a specialized medical professional for further evaluation. The benefit eligibility is based on the documents submitted by the employee's health case provider and any additional third party opinions. If the claim is deemed valid, the benefit will be approved for a specific period of time.

This Court notes that Plaintiff's internal grievance was filed on December 27, 2006 and that on February 23, 2007, Plaintiff was notified that her benefits under the SCP policy were approved until March 5, 2007.  SUF ¶ 23. This in itself shows that Plaintiff's engaging in the protected conduct did not impede her from receiving Pfizer's SCP benefits.

Thereafter, on March 2007, Plaintiff requested an extension of her benefits under Pfizer's SCP. SUF ¶ 25. However, Pfizer's Medical Department determined that the continuation of her benefits was not justified past March 31, 2007 and, as such, she was referred to an independent psychiatrist, Dr. Rivera-Mass, for a medical evaluation. Id. On March 27, 2007, Plaintiff was evaluated by Dr. Rivera-Mass, who rendered an Independent Psychiatric Evaluation concluding that Plaintiff was able to return to work as long as she and Torres were placed in different shifts and would have no contact. SUF ¶ 26. As a result, on April 30, 2007, Pfizer notified Plaintiff that she was not eligible to continue receiving

disability benefits under its SCP after May 9, 2007. SUF ¶ 27-28.[10] On July 5, 2007, Plaintiff requested reconsideration of Pfizer's decision to discontinue benefits. SUF ¶ 29. After reviewing Plaintiff's record, and the recommendation of the Independent Medical Examiner, Pfizer upheld its prior decision and notified Plaintiff on July 18, 2007 that her SCP benefits would not be extended. Id.

Based on the foregoing, this Court concludes that the termination of Plaintiff's SCP benefits was not a result of Plaintiff engaging in the protected conduct. As previously stated, Pfizer granted Plaintiff's request for benefits under SCP after the filing of the internal grievance. Moreover, her benefits were extended until May 9, 2007, despite her having filed a complaint at the EEOC in February 2007. Therefore, this Court finds there is no causal connection between the protected conduct and the adverse employment decision., more so when Plaintiff accepted Pfizer's statements as to the appropriate SCP procedure, and Pfizer duly complied with the same.

As such, Plaintiff's retaliation claim is **DISMISSED with prejudice**.

iii. _State-law claims_

The remainder of Plaintiff's claims are grounded on Puerto Rico law. Because this Court has not dismissed Plaintiff's federal law claim for sexual harassment under Title VII, her state law claims also remain pending before this Court**.**

**Conclusion**

Based on the foregoing, Pfizer's Motion to Strike is **GRANTED in part and DENIED in part**. Pfizer's motion for summary judgment is **DENIED in part and GRANTED in part**. Plaintiff's retaliation claim is **DISMISSED with prejudice**. Pending before the Court are Plaintiff's claim for sexual harassment under Title VII and her state law claims.

---

[10] Notwithstanding Pfizer's termination of Plaintiff's SCP benefits, considering that Plaintiff's physician had recommended rest, Plaintiff was advised she would continue to receive benefits under SINOT. SUF ¶¶ 27-28.

    **SO ORDERED.**

In San Juan, Puerto Rico, this 27th day of February, 2009.

                    S/ *Salvador E. Casellas*
                    SALVADOR E. CASELLAS
                    U.S. Senior District Judge